UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| HELEN HARRIS, on behalf of herself and all others similarly situated,<br><br>        Plaintiff,<br><br>    v.<br><br>AMERICAN EXPRESS COMPANY,<br><br>        Defendant. | Case No. 1:17-cv-00732<br><br>**CLASS ACTION COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF PURSUANT TO 47 U.S.C. § 227 *ET SEQ.* (TELEPHONE CONSUMER PROTECTION ACT)**<br><br>CLASS ACTION<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff Helen Harris, individually and on behalf of all others similarly situated, alleges on personal knowledge, investigation of her counsel, and on information and belief as follows:

## NATURE OF ACTION

1. Plaintiff brings this action for damages, and other legal and equitable remedies, resulting from the illegal actions of American Express Company in negligently, knowingly, and/or willfully contacting Plaintiff and Class Members on their telephones without their prior express written consent within the meaning of the Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq.*, and the Federal Communication Commission rules promulgated thereunder, 47 C.F.R. § 64.1200 (hereinafter referred to as the "TCPA").

2. On March 11, 2005, the Federal Communications Commission ("FCC" or "Commission") issued a citation to American Express for violations of the TCPA, admonishing American Express that "[i]f, after receipt of this citation, you or your company violate the Communications Act or the Commission's rules in any manner described herein, the Commission may impose monetary forfeitures not to exceed $11,000 for each such violation or each day of a continuing violation."

1335424.4

3. On December 2, 2016, a district court in the Northern District of Illinois granted final approval to two class action settlements resolving claims that American Express violated the TCPA through calls made by two of its vendors. *Ossola v. Am. Exp. Co.*, No. 1:13-cv-4836 (N.D. Ill.).

4. Notwithstanding its prior violations of the TCPA and the FCC's citation, American Express has continued to violate the TCPA by (1) contacting Plaintiff and others similarly situated on their cellular telephones via an "automatic telephone dialing system," as defined by 47 U.S.C. § 227(a)(1), and/or using "an artificial or prerecorded voice" as described in 47 U.S.C. § 227(b)(1)(A), without their prior express written consent within the meaning of the TCPA and (2) contacting Plaintiff and others similarly situated on their telephones after they made a "do-not-call" request within the meaning of 47 C.F.R. § 64.1200(d)(3).

5. Plaintiff brings this action for injunctive relief and statutory damages resulting from the Defendant's illegal actions.

## JURISDICTION AND VENUE

6. This matter in controversy exceeds $5,000,000, as each member of the proposed Class of tens of thousands is entitled to up to $1,500.00 in statutory damages for each call that has violated the TCPA. Accordingly, this Court has jurisdiction pursuant to 28 U.S.C. § 1332(d)(2). Further, Plaintiff alleges a national class, which will result in at least one Class member belonging to a different state. Therefore, both elements of diversity jurisdiction under the Class Action Fairness Act of 2005 ("CAFA") are present, and this Court has jurisdiction. This Court also has federal question jurisdiction pursuant to 28 U.S.C. § 1331.

7. Venue is proper in the United States District Court for the Southern District of New York pursuant to 28 U.S.C. §§ 1391(b)-(c) and 1441(a), because: Defendant is deemed to reside in any judicial district in which it is subject to personal jurisdiction at the time the action is commenced; Defendant's contacts with this District are sufficient to subject it to personal jurisdiction; and Defendant is headquartered in this District.

**PARTIES**

8. Plaintiff Helen Harris is and at all times mentioned herein was, an individual citizen of the State of Tennessee.

9. Defendant American Express Company is a New York corporation headquartered in this District.

**THE TELEPHONE CONSUMER PROTECTION ACT OF 1991 (TCPA), 47 U.S.C. § 227**

10. In 1991, Congress enacted the TCPA,[1] in response to a growing number of consumer complaints regarding certain telemarketing practices.

11. The TCPA regulates, among other things, the use of automated telephone equipment, or "autodialers," and prerecorded voices. Specifically, the plain language of section 227(b)(1)(A)(iii) prohibits the use of an autodialer or prerecorded voice to make any call to a wireless number in the absence of an emergency or the prior express consent of the called party.[2]

12. According to findings by the FCC, the agency Congress vested with authority to issue regulations implementing the TCPA, such calls are prohibited because, as Congress found, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls, and such calls can be costly and inconvenient. The FCC also recognized that wireless customers are charged for incoming calls whether they pay in advance or after the minutes are used.[3]

13. The FCC, the agency Congress vested with authority to issue regulations implementing the TCPA, has defined prior express consent in 47 C.F.R. § 64.1200(f)(8) as "an agreement, in writing, bearing the signature of the person called that clearly authorizes the seller

---

[1] Telephone Consumer Protection Act of 1991, Pub. L. No. 102-243, 105 Stat. 2394 (1991), codified at 47 U.S.C. § 227 (TCPA). The TCPA amended Title II of the Communications Act of 1934, 47 U.S.C. § 201 *et seq.*

[2] 47 U.S.C. § 227(b)(1)(A)(iii).

[3] *Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, CG Docket No. 02-278, Report and Order, 18 FCC Rcd 14014 (2003).

1335424.4

to deliver or cause to be delivered to the person called advertisements or telemarketing messages using an automatic telephone dialing system or an artificial or prerecorded voice, and the telephone number to which the signatory authorizes such advertisements or telemarketing messages to be delivered."

14. Under the TCPA, the burden is on defendants to demonstrate prior express written consent.

15. Regardless of whether there exists prior express written consent, the FCC rules allow consumers to make "do-not-call" requests that companies must track in internal do-not-call lists. 47 C.F.R. § 64.1200(c); 16 C.F.R. § 310.4(b)(1)(iii)(B). Telemarketers must provide consumers with an automated opt-out mechanism that "must automatically record the called person's number to the seller's do-not-call list and immediately terminate the call." 47 C.F.R. 64.1200(b)(3). This mechanism was enacted to empower consumers to "stop receipt of unwanted autodialed or prerecorded telemarketing calls to which they never consented."[4]

16. While telemarketing calls to residential lines are exempted where there exists an "established business relationship," no such exemption applies to telemarketing calls to cell phones. *See* 47 C.F.R. § 64.1200(f)(5).

## FACTUAL ALLEGATIONS

17. Plaintiff Harris is, and at all times mentioned herein was, a "person" as defined by 47 U.S.C. § 153(39).

18. Harris did not provide express written consent to receive prerecorded calls by American Express on her cellular telephone.[5] In fact, Harris did not even have an American Express account during the time period that she received calls from American Express.

---

[4] Telephone Consumer Protection Act of 1991, Final Rule, 77 Fed. Reg. 34233, 34239 (June 11, 2012).
[5] *See FCC Declaratory Ruling*, 23 F.C.C.R. at 564-65 (¶ 10).

19. Beginning at least as early as December 2015, American Express repeatedly called Harris's cellular telephone. Harris received repeated, harassing calls at all hours of the day.

20. The majority of the calls were prerecorded. As a result, Harris could not request that the calls end or to voice her complaints to a real person, despite attempts to do so. The prerecorded voice offered to lower Harris's interest rate, even though she did not have any account with American Express, interest-bearing or otherwise.

21. A few calls involved a live person on the other end. During a call on July 14, 19, or 21, Harris told the live caller she had the wrong number and not to call again.

22. During a call on November 1, 2016, at 2:28 PM, Harris told a live caller that she had the wrong number (and that the information had previously been conveyed to American Express) and not to call again. The caller told Harris that a "Mary Harris" had applied for an American Express credit card.

23. Despite these attempts, the automated calls continued.

24. The calls continued through November 2016.

25. Harris received phone calls to her cellular telephone on numerous occasions, including on the following dates and times from telephone number 801-945-5000, as identified by Harris's identification system:

      a.      July 14, 2016, 12:20 PM

      b.      July 19, 3:39 PM

      c.      July 19, 3:45 PM

      d.      July 21, 11:15 AM

      e.      October 31, 2016, 11:30 AM

      f.      November 1, 2016, 2:28 PM

26. Apart from the two live-person calls described above, each of these calls included a prerecorded voice.

1335424.4

27. On January 25, 2017, a paralegal in Plaintiff's counsel's office called 801-945-5000. A prerecorded voice stated "Thank you for calling the American Express Service Center in Salt Lake City."

28. A Google search for the number 801-845-5000 confirms that the number is registered to American Express.

29. Harris was unable to definitively determine the purpose behind American Express's automated calls, but they appear to constitute an attempt to market lower interest rates.

30. During the relevant period and until September 7, 2016, Harris subscribed to a cellular phone plan that provided for limited minutes (250 daytimes, 1,000 night and weekend). The unwanted, automated calls before September 7, 2016 reduced the cell phone minutes available to her.

31. American Express is, and at all times mentioned herein was, a "person", as defined by 47 U.S.C. § 153(39).

32. Many or all of the calls by American Express to Harris on her cellular telephone occurred via an "automatic telephone dialing system," as defined by 47 U.S.C. § 227(a)(1), and/or used "an artificial or prerecorded voice" as described in 47 U.S.C. § 227(b)(1)(A).

33. The telephone number that American Express used to contact Harris, with an "artificial or prerecorded voice" and/or made by an "automatic telephone dialing system," was assigned to a cellular telephone service as specified in 47 U.S.C. § 227(b)(1)(A)(iii).

34. Harris did not provide "prior express consent" allowing American Express to place telephone calls to her cellular phone utilizing an "artificial or prerecorded voice" or placed by an "automatic telephone dialing system," within the meaning of 47 U.S.C. § 227(b)(1)(A).

35. American Express's telephone calls to Harris's cellular phone were not "for emergency purposes" as described in 47 U.S.C. § 227(b)(1)(A).

1335424.4

36. American Express's telephone calls to Harris's cellular phone utilizing an "artificial or prerecorded voice" or placed by an "automatic telephone dialing system" for non-emergency purposes and in the absence of Plaintiff's prior express consent violated 47 U.S.C. § 227(b)(1)(A).

37. The burden is on American Express to demonstrate that Harris provided prior express written consent within the meaning of the statute.[6]

## CLASS ACTION ALLEGATIONS

38. Plaintiff brings this action on behalf of herself and on behalf of all other persons similarly situated (hereinafter referred to as "the Class").

39. Plaintiff proposes the following Class definitions, subject to amendment as appropriate:

> Telemarketing Class: All persons within the United States who, on or after January 31, 2013, received a non-emergency telemarketing call from American Express to a cellular telephone through the use of an automatic telephone dialing system or an artificial or prerecorded voice and who did not provide prior express written consent for such calls.
>
> Do-Not-Call Class: All persons within the United States who, on or after January 31, 2013, received a telephone call from American Express after informing American Express that it had the wrong number.

Collectively, all these persons will be referred to as "Class members." Plaintiff represents, and is a member of, the Classes. Excluded from the Class are American Express and any entities in which American Express has a controlling interest, American Express's agents and employees, any Judge to whom this action is assigned and any member of such Judge's staff and immediate family, and claims for personal injury, wrongful death and/or emotional distress.

---

[6] *See FCC Declaratory Ruling*, 23 F.C.C.R. at 565 (¶ 10).

40. Plaintiff does not know the exact number of members in the Classes, but based upon the representations of Defendant as to its market share, Plaintiff reasonably believes that Class members number at minimum in the tens of thousands.

41. Plaintiff and all members of the Classes have been harmed by the acts of Defendant, because their privacy has been violated, they were subject to annoying and harassing calls that constitute a nuisance, and they were charged for incoming calls.

42. This Class Action Complaint seeks injunctive relief and money damages.

43. The joinder of all Class members is impracticable due to the size and relatively modest value of each individual claim. The disposition of the claims in a class action will provide substantial benefit to the parties and the Court in avoiding a multiplicity of identical suits. The Classes can be identified easily through records maintained by American Express.

44. There are well defined, nearly identical, questions of law and fact affecting all parties. The questions of law and fact involving the class claims predominate over questions which may affect individual Class members. Those common questions of law and fact include, but are not limited to, the following:

    a. Whether Defendant made non-emergency calls to Plaintiff's and Telemarketing Class members' cellular telephones used an automatic telephone dialing system and/or an artificial or prerecorded voice;

    b. Whether Defendant can meet its burden of showing it obtained prior express written consent (*i.e.*, consent that is clearly and unmistakably stated) to make such calls;

    c. Whether Defendant made non-emergency calls to Plaintiff's and Do-Not-Call Class members' telephones after Class members requested not to receive such calls;

    d. Whether Defendant's conduct was knowing and/or willful;

    e. Whether Defendant is liable for damages, and the amount of such damages; and

    f. Whether Defendant should be enjoined from

engaging in such conduct in the future.

45. As a person who received numerous and repeated telephone calls using an automatic telephone dialing system or an artificial or prerecorded voice, without her prior express written consent within the meaning of the TCPA and Rules, Plaintiff asserts claims that are typical of each Telemarketing Class member. As a person who received numerous and repeated telephone calls after she informed American Express that it had a wrong number, Plaintiff asserts claims that are typical of each Do-Not-Call Class member. Plaintiff will fairly and adequately represent and protect the interests of the Class, and has no interests which are antagonistic to any member of the Class.

46. Plaintiff has retained counsel experienced in handling class action claims involving violations of federal and state consumer protection statutes, including claims under the TCPA.

47. A class action is the superior method for the fair and efficient adjudication of this controversy. Class wide relief is essential to compel Defendant to comply with the TCPA. The interest of Class members in individually controlling the prosecution of separate claims against Defendant is small because the statutory damages in an individual action for violation of the TCPA are relatively small. Management of these claims is likely to present substantially fewer difficulties than are presented in many class claims because the calls at issue are all automated and the Class members, by definition, did not provide the prior express consent required under the statute to authorize calls to their cellular telephones.

48. Defendant has acted on grounds generally applicable to the Class, thereby making final injunctive relief and corresponding declaratory relief with respect to the Class as a whole appropriate. Moreover, on information and belief, Plaintiff alleges that the TCPA violations complained of herein are substantially likely to continue in the future if an injunction is not entered.

1335424.4

## CAUSES OF ACTION

### FIRST COUNT

**KNOWING AND/OR WILLFUL VIOLATIONS OF THE TELEPHONE CONSUMER PROTECTION ACT, 47 U.S.C. § 227 *ET SEQ.*; 47 C.F.R. § 64.1200**

49. Plaintiff incorporates by reference the foregoing paragraphs of this Complaint as if fully stated herein.

50. The foregoing acts and omissions of Defendant constitute numerous and multiple knowing and/or willful violations of the TCPA, including but not limited to each of the above-cited provisions of 47 U.S.C. § 227 *et seq.* and 47 C.F.R. § 64.1200.

51. As a result of Defendant's knowing and/or willful violations of 47 U.S.C. § 227 *et seq.* and 47 C.F.R. § 64.1200, Plaintiff and each member of the Telemarketing Class are entitled to treble damages of $1,500.00 for each and every violation of the statute, pursuant to 47 U.S.C. § 227(b)(3).

52. As a result of Defendant's knowing and/or willful violations of 47 U.S.C. § 227 *et seq.* and 47 C.F.R. § 64.1200, Plaintiff and each member of the Do-Not-Call Class are entitled to treble damages of up to $1,500.00 for each and every violation of the statute, pursuant to 47 U.S.C. § 227(c)(5).

53. Plaintiff and all Class members are also entitled to and do seek injunctive relief prohibiting such conduct violating the TCPA by Defendant in the future. Plaintiff and Class members are also entitled to an award of attorneys' fees and costs.

### SECOND COUNT

**STATUTORY VIOLATIONS OF THE TELEPHONE CONSUMER PROTECTION ACT 47 U.S.C. § 227 *ET SEQ.*; 47 C.F.R. § 64.1200**

54. Plaintiff incorporates by reference the foregoing paragraphs of this Complaint as if fully set forth herein.

1335424.4

55. The foregoing acts and omissions of Defendant constitute numerous and multiple violations of the TCPA, including but not limited to each of the above cited provisions of 47 U.S.C. § 227 *et seq.* and 47 C.F.R. § 64.1200.

56. As a result of Defendant's violations of 47 U.S.C. § 227 *et seq.* and 47 C.F.R. § 64.1200, Plaintiff and Telemarketing Class members are entitled to an award of $500.00 in statutory damages for each and every violation of the statute, pursuant to 47 U.S.C. § 227(b)(3)(B).

57. As a result of Defendant's violations of 47 U.S.C. § 227 *et seq.* and 47 C.F.R. § 64.1200, Plaintiff and Do-Not-Call Class members are entitled to an award of up to $500.00 in statutory damages for each and every violation of the statute, pursuant to 47 U.S.C. § 227(b)(c)(5).

58. Plaintiff and Class members are also entitled to and do seek injunctive relief prohibiting Defendant's violation of the TCPA in the future.

59. Plaintiff and Class members are also entitled to an award of attorneys' fees and costs.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that the Court grant Plaintiff and all Class members the following relief against Defendant:

A. Injunctive relief prohibiting such violations of the TCPA by Defendant in the future;

B. As a result of Defendant's willful and/or knowing violations the TCPA, Plaintiff seeks for herself and each Class member treble damages, as provided by statute, of $1,500.00 for each and every violation of the TCPA;

C. As a result of Defendant's statutory violations the TCPA, Plaintiff seeks for herself and each Class member $500.00 in statutory damages for each and every violation of the TCPA;

D. An award of attorneys' fees and costs to counsel for Plaintiff and the Class;

1335424.4

  E. An order certifying this action to be a proper class action pursuant to Federal Rule of Civil Procedure 23, establishing an appropriate Class, finding that Plaintiff is a proper representative of the Class, and appointing the lawyers and law firms representing Plaintiff as counsel for the Class;  and

  F. Such other relief as the Court deems just and proper.

Dated:  January 31, 2017  By:  */s/ Daniel M. Hutchinson*
          Daniel M. Hutchinson

LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
Jonathan D. Selbin
Email: jselbin@lchb.com
250 Hudson Street, 8th Floor
New York, NY  10013
Telephone:  (212) 355-9500
Facsimile:  (212) 355-9592

LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
Daniel M. Hutchinson (*pro hac vice* to be filed)
Email: dhutchinson@lchb.com
275 Battery Street, 29th Floor
San Francisco, CA 94111-3339
Telephone:  (415) 956-1000
Facsimile:   (415) 956-1008

LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
Andrew R. Kaufman (*pro hac vice* to be filed)
Email: akaufman@lchb.com
150 Fourth Avenue North, Suite 1650
Nashville, TN 37219
Telephone:  (615) 313-9000
Facsimile:   (615) 313-9965

MEYER WILSON CO., LPA
Matthew R. Wilson (*pro hac vice* to be filed)
Email: mwilson@meyerwilson.com
Michael J. Boyle, Jr. (*pro hac vice* to be filed)
Email: mboyle@meyerwilson.com
1320 Dublin Road, Ste. 100
Columbus, OH  43215
Telephone:  (614) 224-6000
Facsimile:   (614) 224-6066

*Attorneys for Plaintiff and the Proposed Class*

1335424.4